# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

m 98-20071

————————

Angela NATT,

Plaintiff-Appellee,

VERSUS

WAL-MART STORES, INC.,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-94-3848)

————————————

November 9, 1999

Before GARWOOD, SMITH, and
BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Wal-Mart Stores, Inc. ("Wal-Mart"), appeals a judgment entered on a jury verdict awarding damages for race and sex discrimination and retaliation under title VII.[1] It seeks reversal on three grounds. First, it alleges that plaintiff Angela Natt exercised her peremptory challenges improperly to exclude jurors on the basis of sex. Second, it requests a new trial on grounds of newly discovered evidence and unfair surprise at trial. Finally, it claims the district court applied the wrong legal standards for determining mental anguish and punitive damages. Finding no reversible

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 42 U.S.C. § 2000e et seq.

error, we AFFIRM.

## I.

Wal-Mart hired Natt in 1988 as an invoice clerk in the automotive department of its Beechnut store in Houston, Texas. In early 1991, Wal-Mart promoted her to merchandise assistant, which involved some management responsibilities, including ordering products and paperwork. In 1992, Natt expressed to her district manager, Terry Nagle, her interest in going into management, and in May 1993, Nagle recommended her for management training. She completed the program successfully and, in August, accepted a management position over the tire, lube, and express department at Wal-Mart's store in Texas City, Texas.

Wal-Mart terminated Natt on November 19, 1993. According to Nagle, Natt had allowed non-authorized personnel access to cash register keys in violation of Wal-Mart's key control policy. Natt alleged that these claims were concocted as a way to discriminate and retaliate against her.

In addition to her termination, Natt alleged several instances of discrimination during her tenure with Wal-Mart. In May 1991, she overheard a district manager, Norman Rose, make a highly offensive racial remark. She reported it, and Rose was disciplined. Afterwards, some Wal-Mart associates called her a "black bitch," and in November 1993, someone placed a "black monkey doll" on the security camera in her work area at the Texas City store.

Additionally, Natt alleges, WalMart delayed promoting her into the management training program because of her sex; her proof was that Nagle warned her that a manager's long hours would be hard on a woman. Furthermore, Natt complained that, during her management training, other managers treated her like an outcast and thereby interfered with her training.

Natt requested a management assignment at a new Wal-Mart location in the Houston area that had yet to be built, but instead was assigned to Texas City. Her car allegedly was vandalized by Wal-Mart employees. Finally, she alleged that, while she was on a two-week leave of absence shortly before her termination, merchandise in her department was over-ordered and stacked up in the stock room to make it appear as though she was a poor manager.

A jury found in favor of Natt and awarded compensatory and punitive damages. The court entered judgment after reducing the jury verdict to comply with the statutory caps, *see* 42 U.S.C. § 1981a(b)(3)(D), and awarding attorney's fees.

## II.

Under the Supreme Court's jurisprudence in *Batson* and its progeny, the equal protection component of the Due Process Clause of the Fifth Amendment prohibits litigants from exercising peremptory challenges to exclude potential jurors from jury service because of their race or sex.[2] When counsel objects that a peremptory strike has been exercised for impermissible reasons, the trial court must undertake a three-step inquiry.

First, the opponent of the peremptory challenge must make a *prima facie* case of race or sex discrimination. Then, the burden of production shifts to the strike proponent to present a race- or sex-neutral explanation. If one is tendered, the court must then decide whether the asserted explanation is pretextual and the strike was motivated in fact by improper purposes. *See Purkett v. Elem*, 514 U.S. 765, 767 (1995); *Hernandez v. New York*, 500 U.S. 352, 358-59 (1991).

---

[2] *See Batson v. Kentucky*, 476 U.S. 79 (1986) (barring use of race to exclude jurors by prosecutor); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) (extending *Batson* to private litigants in civil trials); *J.E.B. v. Alabama*, 511 U.S. 127 (1994) (extending *Batson* to juror exclusion on basis of sex).

Only intentional discrimination is prohibited,[3] and the burden to prove improper motivation rests with the opponent of the strike. *See Purkett*, 514 U.S. at 768. Whether counsel has asserted a race- and sex-neutral justification is a credibility determination for the court and is thus reviewed on appeal only for clear error. *See Hernandez*, 500 U.S. at 364-65.

Wal-Mart objected to three of Natt's peremptory strikes. The district court committed no error in allowing Natt to strike Jurors 8 and 10 (both male) on the ground that they were in management and therefore might be biased against claims made by any employee.

A bit more attention is required to dispose of Wal-Mart's objection to striking Juror 11 (male). Natt justified eliminating him on the ground that anyoneSSmale or femaleSSwho works in the *male-dominated* oil and gas industry would be biased against a claim of sex discrimination.[4] Having failed to convince the court that Natt would have kept a *female* oil and gas workerSSand having failed to demonstrate clear error by that courtSSWal-Mart alternatively asserts that, because the objection was premised solely on a sex-*related* criterion, counsel did not state a sex-neutral justification and thus could not survive step two of *Batson.* Moreover, Wal-Mart seeks *de novo* review, rather than review for clear error, on the ground that the district court misapplied the *Batson* three-step inquiry when it found Natt's sex-*related* grounds sex-*neutral* and shifted the burden to Wal-Mart to prove pretext.[5]

We reject Wal-Mart's contention that Natt's stated ground for striking Juror 11 was insufficient to satisfy *Batson* step two. The presence of merely sex-*related* considerations does not transform a valid peremptory strike into a *Batson* offense. Counsel offends equal protection *only* if the juror was excluded because *he* is a member of a protected class. Juror 11 may have been eliminated on grounds of sex-related considerations but not on grounds of *his* sex, and only the former is prohibited under *Batson*.

---

[3] Though disparate impact may be used to infer intent to discriminate, *see Hernandez*, 500 U.S. at 362; *Washington v. Davis*, 426 U.S. 229, 242 (1976), Wal-Mart has made no such claim here.

[4] The colloquy regarding Juror 11 was as follows:

MR. KRENEK [Wal-Mart's attorney]: We were concerned about Juror Number 11, he was in the oil and gas industry, petrochemical industry, and based upon that we had concerns about his ability to judge fairly claims brought by a female in what was an oil and gas man-dominated intensified field.

THE COURT: She's not in the oil and gas industry, the plaintiff is not in the oil and gas industry.

MR. KRENEK No, she's not, your Honor, but because of the gender profile for the oil and gas industry we had concerns about that.

(continued...)

(...continued)
THE COURT: I can't say that these are untrue reasons or that they're improper reasons, Mr. Wrotenbery.

[5] *See United States v. Huey*, 76 F.3d 638, 641 (5th Cir. 1996) (finding reversible error where "district court failed to discharge its clear duty either to elicit a race-neutral explanation for the peremptory challenges or to deny the use of those challenges").

We also reject quickly the claim that the final makeup of the jury—all women—either evinces or constitutes in and of itself a *Batson* violation. This outcome was driven in large part by the fact that the first seven venire members, and eight of the first nine, were women. Moreover, Wal-Mart has no right to a jury consisting of a fair cross-section of the community; it may demand only that the jury selection process not be tainted by improper exclusionary motives.[6]

Therefore, the court committed no clear error in allowing Natt to eliminate Jurors 8, 10, and 11 (all male), even though doing so meant an all-female jury would decide the case. The court accepted Natt's sex-neutral (though sex-related) justifications as sincere, and we see no cause for disturbing the court's credibility determination on appeal.[7]

## III.

Although it presents a number of factual allegations not made at trial but that might have been helpful to its case, Wal-Mart fails to show why it is entitled to a new trial on these grounds. To determine whether newly discovered evidence warrants a new trial, a district court should consider whether the evidence (1) would probably have changed the outcome of the trial; (2) could have been discovered earlier with due diligence; and (3) is merely cumulative or impeaching. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 495 (5th Cir. 1995). The refusal to grant a new trial is reviewed for abuse of discretion. *Lancaster v. Presley*, 35 F.3d 229, 231 (5th Cir. 1994).

Wal-Mart claims that Natt provided

---

[6] *See Batson*, 476 U.S. at 85-86; *Strauder v. West Virginia*, 100 U.S. 303, 305 (1880).

[7] Pursuant to FED. R. APP. P. 28(j), Natt supplements her defense to Wal-Mart's *Batson* challenge by claiming that, as a corporation, Wal-Mart "cannot claim to be a member of the constitutionally protected class alleged excluded from the jury, i.e., males. We do not reach this issue, because we find no improper motive underlying the peremptory strikes.

inconsistent answers regarding her marital status. Pre-trial, she swore she was unmarried. At trial, Natt claimed her marriage had failed because of Wal-Mart.

After trial, Wal-Mart determined that Natt was not married; Natt now explains that hers was only a common law marriage. This discovery is relevant not only for impeachment purposes, but also perhaps to diminish Natt's claim for damages. But the fact that her marriage was at common law was not unfair surprise, for her deposition put Wal-Mart on notice that she had been counseled through her marital difficulties by Reverend Robert Jefferson.

It was up to Wal-Mart to determine whether it had an argument in response based on the nature of Natt's marital relationship. For the same reasons, presenting Jefferson as a witness at trial was also not unfair surprise. Moreover, that Natt's marriage was recognized only at common law is a fact unlikely to have affected the outcome of trial.

Natt also provided an incomplete history of her employment after leaving Wal-Mart. Specifically, she did not disclose that, after her employment with Wal-Mart, she was not only hired but then also discharged by the Houston Public Library for cause, the reasons for which included a criminal conviction for assaulting her supervisor. Such evidence was of course useful for impeachment, but of little help to the issue of mitigation of damages; after all, Natt already had admitted to having a transitory employment record, well-established even absent the library termination. And in any case, this information was within Wal-Mart's grasp, for Natt had revealed in a timely fashion that she had worked at the library.

Natt also alleged racial discrimination against the library and included in her allegations a remarkably similar accusation that her car was vandalized for discriminatory reasons. This goes only to her credibility, however, and again was discoverable with due diligence.

Wal-Mart argues that, taken as a whole, all

the newly discovered evidence *substantially* affected its ability to impeach Natt's credibility. We may or may not agree, but in any case, it does not rise to an abuse of discretion for the court to have held Wal-Mart, rather than Natt, accountable for failing to present the trier of fact with all the facts, for due diligence might have provided Wal-Mart the simplest remedy. It was also not an abuse of discretion for the court, on presentation of the newly discovered evidence, to reverse its reinstatement ruling while denying Wal-Mart's broader motion for a new trial.

IV.

Wal-Mart claims the district court improperly assessed mental anguish and punitive damages. Mental anguish damages are reviewed for abuse of discretion. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1046 (5th Cir. 1998). The testimony of a plaintiff alone may in some cases be sufficient to justify such compensation. *Id*. at 1046-47; *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 809 (5th Cir. 1996). In any case, Natt's own testimony, combined with the corroborating testimony of Reverend Jefferson, was sufficient to support monetary recovery for mental anguish.

We review punitive damages only for abuse of discretion. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 942 (5th Cir. 1996). After the parties filed briefs in this case, the Supreme Court made clear that a title VII plaintiff need not prove egregious conduct by the employer to win punitive damages. *See Kolstad v. American Dental Ass'n*, 119 S. Ct. 2118, 2126 (1999). Rather, punitive damages are available against any employer who intentionally "discriminates in the face of a perceived risk that its actions will violate federal law." *Id.* at 2125. Only a good faith belief that its conduct is legal will protect an employer from exemplary damages. *Id*.

Wal-Mart may have denied the *fact* of its alleged misconduct, but it did not deny its illegality. It is true that an employer will not be vicariously liable for the intentional conduct of its agents if that misconduct is "contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 2129. Here, however, Natt's allegation that Wal-Mart failed to correct its managers' race- and sex-discriminatory conduct was sufficient to negate such a defense. Therefore, the award of mental anguish and punitive damages was not an abuse of discretion.

AFFIRMED.